# EXHIBIT A

**Appeal No. 24-1800**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

StandWithUs Center for Legal Justice, Katerina Boukin, and
Marilyn Meyers

*Plaintiffs-Appellants,*

v.

Massachusetts Institute of Technology,

*Defendant-Appellee,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Case No. 1:24-cv-10577; HON. RICHARD G. STEARNS

---

**PETITION FOR REHEARING AND/OR REHEARING EN BANC**

---

Melissa S. Weiner
PEARSON
WARSHAW, LLP
328 Barry Avenue S,
Suite 200
Wayzata, MN 55391
Tel. (612) 389-0600

Glenn A. Danas
CLARKSON LAW
FIRM, P.C.
22525 Pacific Coast
Highway
Malibu, CA 90265
Tel. (213) 788-4050

Marlene J. Goldenberg
NIGH GOLDENBERG
RASO & VAUGHN,
PLLC
14 Ridge Square NW,
3rd Fl.
Washington, D.C.
20016
Tel. (202) 792-7927

*Attorneys for Plaintiffs-Appellants StandWithUs Center for Legal Justice,*
*Katerina Boukin, and Marilyn Meyers*

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 40(B) ........................................... 1

INTRODUCTION .................................................................................. 2

LEGAL STANDARD ............................................................................ 4

ARGUMENT ......................................................................................... 5

   I.  The panel's opinion directly conflicts with precedent from the Supreme Court, as well as from the Second and Fourth Circuits. ...................................................................................... 5

      A.  The panel's decision failed even to consider the seminal, relevant Supreme Court decisions, and its decision conflicts directly with them. ....................................................... 5

      B.  The panel decision conflicts with the Second Circuit's *Zeno* decision and the Fourth Circuit's *Hurley* decision regarding the intersection of the First Amendment and Title VI. ........................................................................................ 9

      C.  The panel's decision is in direct conflict with *Zeno* and *Hurley* regarding a school's responsibilities to curb harassing conduct under Title VI. ......................................... 12

   II.  Separately, rehearing is warranted because the panel opinion presents an issue of exceptional importance by replacing the proper focus of a Title VI harassment claim from the *effect* of harassment on the victims to the subjective *intent* of the harassers. ............................................... 17

CONCLUSION ..................................................................................... 19

CERTIFICATE OF COMPLIANCE ...................................................... 21

CERTIFICATE OF SERVICE ............................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Ahern v. Shinseki,*
  629 F.3d 49 (1st Cir. 2010) ................................................................. 18

*Billings v. Town of Grafton,*
  515 F.3d 39 (1st Cir. 2008) ................................................................. 18

*Burlington Northern and Santa Fe Ry. Co. v. White,*
  548 U.S. 53 (2006) ............................................................................. 17

*Church of Scientology v. Foley,*
  640 F.2d 1335 (D.C. Cir. 1981) ........................................................... 5

*Davis v. Monroe Cnty. Bd. Of Educ.,*
  526 U.S. 629 (1999) ........................................................................... 18

*Feminist Majority Foundation v. Hurley,*
  911 F.3d 674 (4th Cir. 2018) ..................................................... passim

*Giboney v. Empire Storage & Ice Co.,*
  336 U.S. 490 (1949) ............................................................................. 9

*Harris v. Forklift Sys., Inc.,*
  510 U.S. 17 (1993) ............................................................................. 17

*Healy v. James,*
  408 US 169 (1972) ..................................................................... passim

*Igartúa v. United States,*
  654 F.3d 99 (1st Cir. 2011) .................................................................. 4

*March v. Mills,*
  867 F.3d 46 (1st Cir. 2017) ............................................................... 11

*Oncale v. Sundowner Offshore Servs,*
  523 U.S. 75 (1998) ..................................................................... passim

*Porto v. Town of Tewksbury,*
  488 F.3d 67 (1st Cir. 2007) ............................................................... 18

*Serpas v. Schmidt*,
  827 F.2d 23 (7th Cir. 1987) ...................................................... 4

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
  393 U.S. 503 (1969) ................................................................ 7

*Widmar v. Vincent*,
  454 U.S. 263 (1981) ................................................................ 8

*Zeno v. Pine Plains Cent. Sch. Dist.*,
  702 F.3d 655 (2d Cir. 2012) ...................................... 1, 3, 12, 13

**Statutes**

Title VI of the Civil Rights Act of 1964 ......................... passim

**Other Authorities**

Off. for Civ. Rights, U.S. Dep't of Educ., Dear Colleague
  Letter (May 7, 2024),
  https://www.ed.gov/sites/ed/files/about/offices/list/ocr/letter
  s/colleague-202405-shared-ancestry.pdf.................................. 8

**Rules**

Fed. R. App. P. 40 ....................................................................... 4

Fed. R. App. P. 40(b)(2)(B) ........................................................ 1

Fed. R. App. P. 40(b)(2)(C) ................................................... 1, 4

Fed. R. App. P. 40(b)(2)(D) ................................................... 1, 4

**Constitutional Provisions**

U.S. Const. amend. I ............................................................ passim

## STATEMENT PURSUANT TO RULE 40(b)

Rehearing is warranted per Fed. R. App. P. 40(b)(2)(B)[1] because the panel's decision conflicts with authoritative decisions of the United States Supreme Court, specifically: *Healy v. James,* 408 US 169 (1972) and *Oncale v. Sundowner Offshore Servs,* 523 U.S. 75 (1998).

Rehearing is also warranted per Rule 40(b)(2)(C) because the panel's decision conflicts with authoritative decisions of other Courts of Appeals, specifically *Feminist Majority Foundation v. Hurley*, 911 F.3d 674 (4th Cir. 2018) and *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655 (2d Cir. 2012).

Rehearing is also warranted per Rule 40(b)(2)(D) because the panel's decision raises a question of exceptional importance: whether the Title VI analysis for intentional discrimination and the existence of a hostile environment based on protected status turns on the intent of the perpetrators of the harassing conduct or the effect on the targets of such harassment. Slip. Op. at 32–35.

---

[1] All future references to Fed. R. App. P. will be "Rule".

**INTRODUCTION**

The panel's decision cannot stand for two primary reasons. First, by venturing out beyond the parties' briefing and relying principally on the First Amendment but failing even to *cite* the binding United States Supreme Court decisions on point (*Healy v. James,* 408 US 169 (1972) and *Oncale v. Sundowner Offshore Servs,* 523 U.S. 75, 81 (1998)) the panel decision unsurprisingly runs headlong into conflict with those decisions. If the panel had heeded *Healy*, the seminal decision regarding how the "special characteristics of the school environment" empower the school to limit even core protected political speech that would "materially and substantially disrupt the work and discipline of the school," *Healy*, 408 U.S. at 189, it would have recognized that a school is not relieved of its Title VI obligations merely because political speech is involved. The panel decision flouting *Healy* and its progeny is clear error warranting rehearing.

Notably, by categorically absolving MIT of Title VI liability in derogation of *Healy* the panel decision *also* conflicts with the OCR's longstanding position that a public school has an obligation to respond to harassment and to address a hostile environment endures, even if the

2

harassment involves political speech. And the panel similarly disregarded the Fourth Circuit's analysis in *Hurley* and the Second Circuit's in *Zeno,* as they both apply to the intersection between the First Amendment and Title VI and to Title VI's "deliberate indifference" inquiry.

Second, the panel's decision raises a question of exceptional importance warranting rehearing. By misapplying binding precedent, the panel replaced the proper analysis of a Title VI hostile environment claim, shifting the focus from the *effect* on the targeted individuals to the *intent* of the harassers. By doing so, the panel also rejected the allegations of Jewish and Israeli students regarding what conduct targets their identities in favor of the panel's own conception of what amounts to discriminatory conduct. This flat rejection of Jews' and Israelis' allegations of what constitutes identity-based harassment presents a serious problem that must be corrected by rehearing.

If the panel's decision is not reversed and Israelis and Jews are not permitted to proceed past the pleading stage with allegations of a prolonged harassment campaign that denied them the equal benefits of an MIT education, of which MIT was aware and repeatedly failed to

3

ameliorate, this Court is effectively sanctioning either the neutralization or blatantly unequal application of Title VI.

Rehearing, either panel or en banc, is thus warranted.

## LEGAL STANDARD

Pursuant to Rule 40, rehearing may be granted when the panel overlooked or misapplied certain facts or laws. Rule 40 further provides that rehearing en banc may be ordered when "the panel decision conflicts with an authoritative decision of another United States court of appeals (with citation to the conflicting case or cases)," or "the proceeding involves one or more questions of exceptional importance, each concisely stated." Rules 40(b)(2)(C) & (D). Regarding what constitutes a question of "exceptional importance," Judge Torruella of this Court noted in his dissent from denial of rehearing en banc in *Igartúa v. United States*, 654 F.3d 99, 105 (1st Cir. 2011)

> The views of other judges regarding what constitutes an issue of exceptional importance should inform this court on this matter. . . Judge Easterbrook has said that "the questions of principle glossed over by the panel's opinion are far more important than the outcome of th[e] case, and they are worth the extra judicial time necessary to get them right." *Serpas v. Schmidt*, 827 F.2d 23, 40 (7th Cir. 1987) (Easterbrook, J., dissenting from denial of rehearing en

4

banc). Judge Robinson, joined by Judges Edwards
and Ginsburg, stated that "[i]n the exceptional
case . . . en banc rehearing may be appropriate to
cure gross individual injustice." *Church of
Scientology v. Foley*, 640 F.2d 1335, 1341 n.46
(D.C. Cir. 1981) (Robinson, J., dissenting from
denial of rehearing en banc).

## ARGUMENT

## I.   The panel's opinion directly conflicts with precedent from the Supreme Court, as well as from the Second and Fourth Circuits.

The panel's analysis of "deliberate indifference" under Title VI

cannot be squared with applicable decisions from the Supreme Court, as

well as the Second and Fourth Circuits, both as to the interplay between

the First Amendment and Title VI and "deliberate indifference" under

Title VI.

### A.   The panel's decision failed even to consider the seminal, relevant Supreme Court decisions, and its decision conflicts directly with them.

According to the panel, "the question is whether Title VI required

MIT to try to put an end to the protestors' speech…." Slip. Op. at 22. Not

so. The actual question presented to the panel was whether MIT fulfilled

its Title VI obligations in its response to the pattern of harassing and

intimidating conduct toward Jewish and Israeli students at MIT.

The panel's opinion entirely fails to acknowledge controlling Supreme Court decisions and misstates the application of the First Amendment to a private university's legal duty to protect students' rights under Title VI. The Court in *Healy* discussed the bounds of the First Amendment at public universities and held, "In the context of the 'special characteristics of the school environment,' the power of the government to prohibit 'lawless action' is not limited to acts of a criminal nature." 408 U.S. at 189. The Court went on to note, "[a]lso prohibitable are actions which 'materially and substantially disrupt the work and discipline of the school.' Associational activities need not be tolerated where they infringe reasonable campus rules, interrupt classes, or substantially interfere with the opportunity of other students to obtain an education." *Id.* (internal citations omitted).

Plaintiffs sufficiently alleged that MIT failed to strike that balance. Plaintiffs do not dispute that there is a right of students to assemble or discuss or advocate for issues important to them (no matter how objectionable). Plaintiffs do, however, take great issue with the unlawful harassment they experienced, which was directed at Jewish and Israeli students, in contravention of both Title VI and MIT's own policies. *See*

JA-25 ¶ 38, JA-27–34, JA-53–73, JA-75–103, and *Healy*, 408 U.S. at 192 (a college has the inherent power to protect itself and expect "that its students adhere to generally accepted standards of conduct").

Plaintiffs' complaint chronicled in detail the school policies their harassers violated and described at length how the harassment also progressed past mere speech into a pattern of *conduct*. *See generally* JA-49–72, JA-74–105, and *Healy*, 408 U.S. at 192 ("Petitioners may, if they so choose, preach the propriety of amending or even doing away with any or all campus regulations. They may not, however, undertake to flout these rules.").

A school's authority to restrict speech on campus "is not limited to acts" that would be "prohibitable" by the government outside the campus setting. *Healy,* 408 U.S. at 189. Although students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969), the Supreme Court has made clear that First Amendment freedoms "must always be applied 'in light of the special characteristics of the [school] environment.'" *Healy,* 408 U.S. at 180 (quotation omitted). Because "[a] university's mission is education," the

Court has "never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities." *Widmar v. Vincent,* 454 U.S. 263, 268 n.5 (1981). The panel failed to account for the proper standard: schools are not permitted to allow harassing speech that "materially and substantially disrupt[s] the work and discipline of the school."[2] *Healy,* 408 U.S. at 189. By failing even to cite *Healy* or acknowledge that MIT had considerable leeway in which to enforce its own time, place, and manner restrictions to protect its Jewish and Israeli students, the panel erred.

The panel's decision also directly flouts *Oncale,* 523 U.S. at 81, in which the Court held that the objective severity of a hostile environment "should be judged from the perspective of a reasonable person in the plaintiff's position." However, the panel did not attempt to evaluate the eight-month-long course of harassing conduct from the perspective of

---

[2] This also aligns with the OCR's longstanding position, that "The fact that harassment may involve conduct that includes speech in a public setting or speech that is also motivated by political or religious beliefs . . . does not relieve a school of its obligation to respond under Title VI . . . if the harassment creates a hostile environment in school for a student or students." *See* Off. for Civ. Rights, U.S. Dep't of Educ., Dear Colleague Letter (May 7, 2024), https://www.ed.gov/sites/ed/files/about/offices/list/ocr/letters/colleague-202405-shared-ancestry.pdf at 3.

reasonable Jewish or Israeli students, instead substituting its own views of what constitutes objectively offensive conduct. *See, e.g.,* Slip. Op. at 22 (framing question as "[u]sing Title VI to compel adherence to a preferred political viewpoint," and citing precedents addressing viewpoint discrimination). This flies in the face of *Oncale*.

### B. The panel decision conflicts with the Second Circuit's *Zeno* decision and the Fourth Circuit's *Hurley* decision regarding the intersection of the First Amendment and Title VI.

Unlike the Fourth Circuit in *Hurley*, the panel's decision fails to engage properly with the intersection between the First Amendment and Title VI. Instead, the panel made it impossible for the First Amendment and Title VI to coexist. Slip. Op. at 18–25. This is legally unfounded. The Fourth Circuit in *Hurley* considered a course of harassing and abusive conduct, including but not limited to threats directed at female college students based on their having engaged in protected speech and conduct. *Hurley* made clear that a harassing course of conduct can be illegal and unprotected, even when carried out just through speech. *Id*. at 691 n.7 (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgment of freedom of speech...to make a course of conduct illegal merely because the conduct was in part initiated,

evidenced, or carried out by means of language, either spoken, written, or printed.")).

In marked contrast to *Hurley*, the panel decision improperly made factual findings that the protestors here were merely engaged in political speech that was, according to the panel, protected by the First Amendment. Slip. Op. at 36 (protesters were merely "gathering together, chanting, and holding signs"). Yet, Plaintiffs alleged that those protesters were *not* merely engaging in speech. Rather, they had engaged in a persistent pattern of harassing *conduct* targeted at Jewish and Israeli members of the campus community. *See, e.g.,* JA-59–61, JA-63–67, JA-69, JA-71, JA-78, JA-81–85, JA-87, JA-89–91. One of the more egregious incidents in this pattern of conduct involved protestors illegally choosing to set up on campus property in violation of long-standing time, manner, and place restrictions, which MIT admitted was "a clear violation of [MIT's] procedures for registering and reserving space for campus demonstrations." JA-86 ¶ 227. When MIT finally got around to clearing the encampment after tolerating it for nearly three weeks, MIT even explained that "freedom of expression...does not protect the [conduct of] continued use of a shared Institute resource in violation of long-

established rules," JA-91 ¶ 245, and further acknowledged that the school had the power to put a stop to these protests, JA-86, JA-91. The panel nonetheless failed to recognize that core political speech can (and should) be restricted when conducted in violation of content-neutral "time, manner, or place" restrictions that are tailored to serve significant governmental interests—here providing equal educational opportunities and resources to all students regardless of race, religion, or national origin—so long as they leave open ample alternative channels for communication. *March v. Mills*, 867 F.3d 46, 54 (1st Cir. 2017). The panel entirely failed to consider that such alternatives might exist and instead disregarded *Hurley* (and *Healy*) in effect determining that speech whose content is generally protected may be carried out with complete impunity. Slip Op. at 25; *see also* JA-87–91 (citing actions taken by several other universities under similar circumstances to stop harassment of Jewish and Israeli students on campus after October 7).

While *Hurley* found that a course of harassment targeted at women is not protected simply because it was conducted via speech, the panel opinion here reviewed similar allegations of a course of conduct targeted at students because of their Jewish and/or Israeli identities. Yet, the

panel decision inexplicably found those allegations not plausible. Slip Op. at 36 ("plaintiffs allege no facts to plausibly indicate that the protestors chose Kresge Lawn for their encampment because of its proximity to Hillel *rather than for its prominent location and preferred terrain for tents*,") (emphasis added). *But see* JA-81 (showing several alternative options).

Here, as in *Hurley* (and consistent with *Healy*)*,* the discriminatory and harassing course of conduct triggered MIT's Title VI obligations to take corrective action, even though the harassment was conducted primarily through speech, and even if the content of such speech may have been protected by the First Amendment (it was not, and even as a federally funded private institution, MIT cannot take different approaches in its responses to harassment of protected groups).

## C. The panel's decision is in direct conflict with *Zeno* and *Hurley* regarding a school's responsibilities to curb harassing conduct under Title VI.

The panel's decision conflicts with *Zeno* and *Hurley* in another way: regarding deliberate indifference under Title VI. While the panel was satisfied that MIT could not be liable as a matter of law, *Zeno* held that "Responses that are not reasonably calculated to end harassment are

12

inadequate." 702 F.3d at 669 ("Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances.")

Plaintiffs pleaded exactly this: that, despite MIT's knowledge of the issue, events on campus continued to get worse, not better, as time elapsed. *See, e.g.,* JA-74–96 (showing how events worsened between filing Plaintiffs' original and Amended Complaint). While MIT claimed it was taking measures to curb the harassment against Jews and Israelis, Plaintiffs provided sufficient facts to demonstrate, at a minimum, that MIT's efforts were not working and, further, that its administrators knew it. *Id.* (showing events worsening despite MIT's "efforts"); JA-17 ¶ 10, JA-127, JA-133 (multiple reports made to MIT by Plaintiffs and other students); JA-72–73 (President Kornbluth testifying before Congress due to hostile campus environment) *Cf. Zeno*, 702 F.3d at 670 (finding school's efforts, including discipline that did not take place until more than a year after the incident, holding a mediation but failing to inform the plaintiff of where it was being held, and holding inapplicable programs, to be "little more than half-hearted measures"); *Hurley*, 911 F.3d at 679–83

(finding school's efforts inadequate because the university had "made no real effort to investigate or end the harassment and threats," even though the school held listening circles, forums on sexual assault, sent emails to the student body about sexual assault, and arranged police protection for victims in response to specific threats). *Hurley* explained, "when an educational institution claims that it has done all it can to address instances of sexual harassment and threats, a reviewing court should consider whether the institution failed to take other obvious and reasonable steps." *Id*. The panel in this case failed to undertake that consideration.

The panel opinion: failed to acknowledge that the allegations in the Amended Complaint set forth a pattern of harassing and intimidating conduct; focused exclusively on the content of the speech involved in that conduct; and, concluded that the speech was constitutionally protected political expression such that Title VI did not "require[] MIT to try to *put an end to [that] speech*." Slip. Op. at 22. This holding, however, ignored that (1) there are multiple options—other than silencing speech—available to educational institutions to comply with their Title VI obligations to address hostile campus environments; (2) Plaintiffs clearly

and plausibly alleged how and why MIT's responsive actions were unreasonable under the known circumstances; (3) Plaintiffs alleged reasonable responsive actions—other than silencing speech—that MIT could have taken but did not; and (4) MIT's response to the harassment of Jewish and Israeli students was markedly different from its response to the harassment of other protected minorities, constituting not merely deliberate indifference but direct discrimination. JA-96–103.

MIT's selective enforcement of its own policies, in particular its "time, place, or manner" restrictions—when the speech was directed at Israeli and Jewish students—violated MIT's Title VI obligations and its own policies, especially considering allegations that MIT swiftly enforced such restrictions when similar conduct was directed at Black students or LGBTQ+ students. JA-96–103.

Allegations as to MIT's response to its Jewish and Israeli students' pleas for help differed markedly from MIT's actions when other groups felt victimized by (or might one day feel victimized by) campus hostility. For instance, MIT acted swiftly in the wake of the tragedies against Black people (the killing of George Floyd) to assure its community that MIT would affirmatively ensure that people of color at MIT would be protected

against racism on campus; but MIT did nothing similar in the wake of October 7, 2023 for Israelis and Jews. JA-96–103. In fact, as alleged, MIT's ostensible guardians against discrimination, MIT's DEI and IDHR officers (i) **told Israelis and Jews that they were not a protected class under Title VI**, (ii) discouraged Israelis and Jews from pursuing a discrimination complaint against an MIT postdoc who tweeted about Zionists stealing Palestinian bodies to harvest their organs —with the officer even "confirim[ing]" that this an antisemitic "blood libel," and (iii) tweeted on October 17, 2023 that "Israel doesn't have a right to exist, it's an illegitimate settler-colony like the US." JA-70–71, JA-76 ¶ 205, JA-77 ¶ 209, JA-96–103. MIT's disparate application of its own policies highlights the deliberate indifference that Plaintiffs plausibly alleged.

Because the panel's opinion failed to consider other "obvious and reasonable steps" MIT could have taken here (including those alleged in the Amended Complaint) to stop the protestors' illegal pattern of harassing conduct, the panel opinion is, especially at the pleading stage, flatly at odds with the Fourth Circuit's analysis of "deliberate indifference" in *Hurley*.

II.  **Separately, rehearing is warranted because the panel opinion presents an issue of exceptional importance by replacing the proper focus of a Title VI harassment claim from the *effect* of harassment on the victims to the subjective *intent* of the harassers.**

The severity of the harassment must be judged from the perspective of a reasonable person *in the plaintiff's position*, considering all the circumstances. *Oncale,* 523 U.S. at 81 (objective severity of hostile environment "should be judged from the perspective of a reasonable person in the plaintiff's position")*; see also Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993) ("But we can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."); *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) ("Whether a particular [action] is materially adverse depends upon the circumstances of the particular case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'").

17

In addition to the Supreme Court reiterating that the effect of the harassment, not the intent of the harasser, is what matters, the First Circuit has also agreed time after time. *See, e.g., Ahern v. Shinseki*, 629 F.3d 49, 55–56 (1st Cir. 2010) ("This objective assessment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.") (citing *Oncale,* 523 U.S. at 81); *Billings v. Town of Grafton,* 515 F.3d 39, 48 (1st Cir. 2008) ("Instead, 'the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'") (citation omitted). It is the "deprivation of the benefits and opportunities of the school" (the *effect* of the harassment) that is key to a Title VI plaintiff's harassment-based claim, irrespective of the *intent* of the harassers.

The elements of a Title VI hostile environment claim in this Circuit do *not* include "intentional discrimination" by the harassers.[3] Yet the

---

[3] *See Porto v. Town of Tewksbury*, 488 F.3d 67, 72–3 (1st Cir. 2007) (quoting *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 650 (1999)), explaining the five elements of a Title VI hostile environment claim are: (1) plaintiffs were "subject to 'severe, pervasive, and objectively offensive' . . . harassment"; (2) the harassment "caused the plaintiff to be deprived

panel decision erroneously faulted Plaintiffs for failing to allege facts that would have allowed an inference that the MIT protesters' "strident criticisms of Israel" were, in fact, motivated by antisemitism. *See* Slip. Op. at 32; *see also* Slip. Op. at 36 (faulting Plaintiffs' allegations that the protesters set up their encampment right outside Hillel as being insufficient to demonstrate their invidious intent, because in the panel's view the site may instead have been chosen due to it being the "preferred terrain for tents"). *But see* JA-127–28 (showing effects on Plaintiffs included being forced to avoid classes and exams in person, being forced to avoid certain areas of campus, and being told to avoid walking through certain parts of campus by faculty members).

The panel's invented standard simply does not square with First Circuit jurisprudence.

## CONCLUSION

For the reasons explained above, rehearing (either panel or en banc) is required. Otherwise, the Court will effectively allow the

---

of educational opportunities or benefits"; (3) the school "knew of the harassment"; (4) the harassment occurred "in [the school's] programs and activities"; and (5) the school "was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances."

19

withdrawal of Title VI's protections for Jews and Israelis in this Circuit.

Dated: November 25, 2025      By: _/s/ Glenn A. Danas_
                                Glenn A. Danas
                                CLARKSON LAW FIRM, P.C.

                                Melissa S. Weiner
                                PEARSON WARSHAW, LLP

                                Marlene J. Goldenberg
                                NIGH GOLDENBERG RASO &
                                VAUGHN, PLLC

                                *Attorneys for Plaintiffs-*
                                *Appellants StandWithUs Center*
                                *for Legal Justice, Katerina*
                                *Boukin, and Marilyn Meyers*

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because it contains 3,855 words, excluding parts of the brief exempted by Fed. R. App. P 32(f).

2.    This brief complies with the typeface and type-size requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in proportionally spaced typeface using Microsoft Word, in 14-point size.

Dated: November 25, 2025          By:  */s/ Glenn A. Danas*
                                        Glenn A. Danas
                                        CLARKSON LAW FIRM, P.C.

                                        *Attorneys for Plaintiffs-*
                                        *Appellants StandWithUs Center*
                                        *for Legal Justice, Katerina*
                                        *Boukin, and Marilyn Meyers*

# CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2025 I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system:


Dated:  November 25, 2025        By:  */s/ Glenn A. Danas*
                                     Glenn A. Danas
                                     CLARKSON LAW FIRM, P.C.

                                     *Attorneys for Plaintiffs-*
                                     *Appellants StandWithUs*
                                     *Center for Legal Justice,*
                                     *Katerina Boukin, and Marilyn*
                                     *Meyers*